Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

JS-6

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 0413 | **DATE** | 7/6/2004 |
| **CASE TITLE** | Ralph Cabrera vs. World's Finest Chocolate, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: In sum, because, even under the most liberal reading of his complaint, Cabrera has presented no claims that are viable, we must dismiss the complaint in its entirety. Accordingly, we grant WFC's motion to dismiss (3-1). Any other pending motions are moot. The status hearing set for 7/15/04 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | 19 |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 07 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | 7/6/2004 | |
| | | | date mailed notice | |
| GL | courtroom deputy's initials | 2004 JUL -6 PM 4:37 | GL | |
| | | date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RALPH CABRERA, | ) | |
| | ) | **DOCKETED** |
| Plaintiff, | ) | JUL 0 7 2004 |
| | ) | |
| v. | ) | Case No. 04 C 0413 |
| | ) | |
| WORLD'S FINEST CHOCOLATE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

*Pro se* plaintiff Ralph Cabrera filed an eight-count amended complaint against Defendant World's Finest Chocolate ("WFC") alleging violations of Title VII, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Illinois Human Rights Act ("IHRA"), 775 Ill. Comp. Stat. 5/2-101 *et seq.*, and various state laws. Cabrera also asserts several claims under the Constitution. WFC moved to dismiss the amended complaint in its entirety. For the reasons set forth below, WFC's motion is granted.

## I.  PROCEDURAL HISTORY

Cabrera filed his complaint on January 20, 2004. WFC moved to dismiss the complaint on February 9, 2004. On February 10, 2004, we set a briefing schedule on the motion. Cabrera was to respond by March 2, 2004, and WFC was to reply by March 9, 2004. Cabrera did not file a response to the motion to dismiss by the scheduled deadline. On March 9, WFC complied with the scheduling order by filing its reply brief even though no responsive brief had been filed by Cabrera. On that same day, Cabrera filed a "Motion to Amend and Supplemental Pleadings," which we construed as a motion for leave to amend his complaint to include an additional paragraph that he submitted as an attachment to his motion. WFC urged us to deny the motion for leave to amend. In accordance with Federal Rule of

Civil Procedure 15(a), we granted Cabrera leave to amend his complaint[1] to add the paragraph included in his motion. In the text of that same motion, Cabrera requested us to "strike defendant[']s motion to dismiss." Acknowledging Cabrera's *pro se* status, his failure to file a response to the motion to dismiss, and in an abundance of caution, we provided Cabrera an additional opportunity to respond to the motion to dismiss. We also permitted WFC to file a reply to the response. Following the issuance of our order, Cabrera did respond to the motion to dismiss. Approximately one week later, on April 26, 2004, Cabrera filed an amended complaint. The amended complaint did not add the paragraph to which he referred in his motion, but rather included two additional "causes of action", a new claim under the ADEA, new factual allegations, and more attachments. WFC replied to the motion to dismiss and also moved to strike or, alternatively, dismiss the amended complaint. Because the Seventh Circuit has made clear that a motion to dismiss is not a responsive pleading, *see, e.g., Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir. 1984), and we considered this to be Cabrera's first attempt to actually serve an amended complaint, we denied WFC's motion to strike.[2] We acknowledged, however, that although the amended complaint retained many of the defects highlighted by WFC, it also raised new allegations that WFC would likely seek to address. The parties were therefore provided another opportunity to

---

[1] Under Federal Rule of Civil Procedure 15(a), Cabrera is entitled to amend his complaint once as a matter of course before a responsive pleading is served. He need not ask for leave to do so. *See Stewart v. RCA Corp.*, 790 F.2d 624, 631 (7th Cir. 1986).

[2] Even if we had construed this as Cabrera's second attempt, we would have granted him leave to amend his complaint as Rule 15(a) reflects "a liberal attitude towards the amendment of pleadings." *Campania Management Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002).

2

supplement their memoranda.³ Now that the parties have had ample opportunity to present fully their arguments as to the merits of the amended complaint, we issue our opinion.

## II. BACKGROUND

For the purposes of this motion, we must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997). Although some of Cabrera's statements are not easy to fully comprehend, we have set forth the facts in this section as we understand them. These facts are taken from the first amended complaint ("FAC") submitted on April 26, 2004.

Cabrera began working at WFC in 1997. He was employed as a facility maintenance technician. He describes himself as Hispanic-American-Indian. At WFC, he was under the supervision of John Singletary, Kenny Damron, Ray Southern and Len Serwecinski, who are all white. (FAC ¶ 7). Some time in January 1999, Cabrera entered into a verbal agreement with Richard Kessell, Serwecinski's boss, to study structural engineering design in Kessell's office, using Kessell's computers. Cabrera agreed not to use any equipment or read any study materials during work hours. (FAC ¶ 8). Several weeks later, Kessell notified Serwecinski of the agreement he had made with Cabrera. As a result, according to Cabrera, Serwecinski "retaliated with extreme prejudice" against Cabrera because of Cabrera's interest in furthering his education. (FAC ¶ 9).

In February 1999, Singletary informed Cabrera that he was no longer permitted to enter the engineering office and if Cabrera did not comply with the rules, Cabrera would be disciplined or

---

³ WFC has moved to dismiss the amended complaint. However, its original motion to dismiss, although aimed at the first complaint, shall stand as to any alleged defects in the complaint that have survived the amendment. *Cf.* 6 Charles Alan Wright, *et al.*, *Federal Practice & Procedure*, § 1476 (2d ed. 1990) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

3

terminated. Cabrera was told that he could not enter any offices unless he was assigned to repair something, invited in for a conference, or given permission. (FAC ¶ 10). Cabrera continued, however, to study after working hours in Kessell's office with Kessell's permission. In the following weeks, Cabrera noticed he was under surveillance throughout his work shift and during his lunch hour. (FAC ¶ 11). Cabrera also reports that on several occasions he was escorted out of the building by Singletary and restrained by security personnel from entering the facility until fifteen minutes prior to his scheduled working hours. (FAC ¶ 15).

Prior to a snowfall in March 1999, Cabrera requested that a repairman inspect one of WFC's truck's tires. Later that month, Singletary ordered Cabrera to plow snow from a parking lot deck. Cabrera refused to do so because he believed that the truck used to plow snow was unsafe. (FAC ¶ 12). Singletary assured Cabrera that the truck's tires had been repaired. Cabrera therefore plowed the parking lot deck. While doing so, he lost control of the truck and knocked out a portion of a brick wall partition. Cabrera refused to plow further until the truck was repaired by a certified repairman. *Id.* Cabrera received a "warning leading to suspension" apparently for his refusal to use the truck.

On March 16, 1999, Singletary ordered Cabrera to use a pickup truck to move sand to another location. As Cabrera was transporting the sand, the pickup truck's hatch broke and two bags of sand fell to the street. Cabrera was able to pick up the sand and deliver it to the proper location. According to Cabrera, although he notified Singletary and Serwecinski that the hatch had broken, he was suspended for one day. (FAC ¶ 13). Later, in June 1999, Singletary ordered Cabrera to repair a steel door. The repair required the use of heavy equipment. Cabrera states that he used his own vehicle to transport the equipment to the work site and tried to park as close to the work site as possible. (FAC ¶ 14). Cabrera explains that no handicap parking signs were posted in the area. Nevertheless, Cabrera was suspended for three days for parking in a handicap parking space.

4

In August 1999, Singletary ordered Cabrera to repair a steel door in the sugar silo. Cabrera refused because he was allergic to bees and he was concerned there were bees in the silo. He states that Singletary was informed of Cabrera's allergy when he was hired. (FAC ¶ 16). Cabrera requested that another employee be assigned to the task. Singletary informed Cabrera that this was his last chance and if he did not complete the task, he would be terminated. He assured Cabrera there were no bees in the silo. When Cabrera entered the silo, he saw hundreds of bees. Cabrera quickly exited and apparently did not repair the door.[4] *Id.*

According to the complaint, on October 12, 1999, the maintenance supervisor, Kenny Damron, instructed Cabrera to move some office furniture out of an office belonging to Ms. Johnson and thereafter clean the vacant office. Once the furniture was moved, Cabrera began cleaning the office. Ms. Johnson returned and was frustrated with Cabrera for moving her office furniture. She asked Cabrera to move a computer monitor from under her desk and place it in the fire escape stairwell leading to the roof. Cabrera opened the stairwell and found that office supplies and files barricaded the fire exit. Cabrera apparently began discussing the importance of having the stairwell clear and noted other safety concerns. Cabrera placed the computer monitor in the threshold of the stairwell door. Later that afternoon, Cabrera was terminated. (FAC ¶ 17).[5]

Cabrera filed this action on January 20, 2004. He filed his amended complaint on April 26, 2004. He claims that as a result of the conduct set forth above, he suffered damages and is entitled to judgment. (FAC ¶ 17A). He alleges that although his work performance was exemplary, WFC "acted with malice and ill will towards Cabrera" discharging and otherwise discriminating against him because

---

[4] Cabrera does not state whether he was disciplined following this incident. He does state he "suffered damages" as a result of the incident.

[5] Cabrera alleges he was terminated on 10-12-99 in paragraph 17 of the complaint and that his employment was terminated on or about 10-13-99 in paragraph 17(d).

5

of his race. (FAC ¶¶ 17B-C). He contends that his job performance suffered "as a result of the racial harassment and created an objectively intimidating, hostile and offensive workplace." (FAC ¶ 17E). He claims he suffered adverse employment actions in the form of retaliatory and constructive discharge. *Id.* ¶ 17F. For these reasons, Cabrera seeks lost earnings, benefits, compensatory and punitive damages, and other compensation.

## III. STANDARD OF REVIEW

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to decide the adequacy of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Therefore, a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Where, as here, a plaintiff is proceeding *pro se*, we have a special responsibility to construe the complaint liberally. *See Donald v. Cook County Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). However, a *pro se* plaintiff can plead himself out of court by pleading facts that undermine his case. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).

## IV. ANALYSIS

Cabrera complains that WFC violated numerous statutes and constitutional provisions. As far as we can discern, his amended complaint alleges the following causes of action: violations of Title VII; the ADEA; the Illinois Human Rights Act; common law claims of wrongful discharge, civil conspiracy, defamation, and intentional infliction of emotional distress; statutory claims of educational intimidation and stalking under the Illinois Criminal Code; violations of 42 U.S.C. § 1983 and 1985; constitutional

claims under the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution; and violations Article 1, sections 2, 5, 6, 12, 17, 20 and 23 of the Illinois Constitution.[6]

### A. Title VII and ADEA

In Illinois, an individual complaining of discriminatory conduct must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful conduct. *See* 42 U.S.C. § 2000e-5(e); *see also Hentosh v. Herman M. Finch Univ. of Health Servs.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Failure to do so renders the complaint untimely and the claimant is precluded from bringing an action in court. *Fairchild v. Forma Scientific, Inc.*, 147 F.3d 567, 574 (7th Cir. 1998); *see also Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir. 2000) (affirming district court's finding that plaintiff's Title VII claim was time-barred when the complaint was not filed with the EEOC within 300 days); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (applying the same 300 day time period to claims brought under the ADEA).

Cabrera alleges several violations of Title VII and the ADEA stemming from his termination on October 13, 1999 and activities leading up to his termination.[7] Cabrera complains of no conduct occurring subsequent to his termination. Cabrera filed a charge with the EEOC on April 1, 2004, and received a right to sue letter on April 9, 2004 – more than three years outside of the 300 day window.

---

[6] Included in the heading for each count, Cabrera lists a combination of some or all of these claims. In the text of each count, Cabrera at times mentions these claims but also uses boilerplate words or phrases that, although not listed as one of the several violations provided in the heading, may be an attempt to assert yet another claim. Because we construe the complaint liberally and acknowledge Cabrera's *pro se* status, we will address each phrase that could possibly indicate a cause of action in addition to each of the causes of action listed in the heading of each count. Cabrera's amended complaint makes clear that he is no longer pursuing a cause of action under the Occupational Safety and Health Act.

[7] Either termination date Cabrera alleges in his amended complaint would still render his charge with the EEOC on April 1, 2004 untimely.

7

The timely filing of a charge is not a jurisdictional prerequisite for filing a federal lawsuit but, like statutes of limitations, is subject, under certain circumstances, to waiver, estoppel, and equitable tolling. *Hentosh v. Herman M. Finch Univ. of Health Servs.*, 167 F.3d 1170, 1174 (7th Cir. 1999) (internal quotation marks and citations omitted) (explaining that equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time" and that equitable tolling applies when, "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim."). No facts or allegations in the amended complaint indicate that any of these doctrines apply in this case. Although Cabrera appears to be asserting in his most recent response, at least in reference to his state law claims, that he was under a legal disability as described in 735 Ill. Comp. Stat. 5/13-211, this allegation will not save his state law or federal claims from the applicable statutes of limitations. While the doctrine of equitable tolling may apply if a plaintiff suffers from a disability, it is only available in limited circumstances. *McKinley v. Dist. 205 Thornton Township*, No. 99-6127, 2001 WL 630707, * 2 (N.D. Ill. May 31, 2001) (citing *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).

Cabrera states that, commencing in November 1999, he experienced and was treated for a sexual dysfunction. This allegation is not contained in his amended complaint, nor has Cabrera offered any support that such a problem is a legal disability such that it would toll the limitations period. "Mere allegations of a disability do not automatically guarantee a tolling of the charge-filing period." *Chaney v. City of Chicago*, No. 95-1979, 1996 WL 718519, at * 4 (N.D. Ill. Dec. 12, 1996) (citation omitted). Instead, for a medical condition or illness to toll the Title VII filing period, a plaintiff must allege that (1) his physical or mental condition prevented him from filing during the requisite period and (2) this condition existed for the majority of that filing period. *Id.* The first condition is met only if plaintiff is "unable to obtain vital information because a mental or physical condition affected his legal competency." *Id.* While it is possible Cabrera could bring forth evidence to meet the second element,

even a generous reading of Cabrera's assertions in his response would not allow us to conclude that his ailment affected his mental functioning or in any way affected his capability of bringing a legal action. *Id.* (explaining that even though plaintiff's condition was at times incapacitating, he had not set forth facts sufficient to show that he was incapable of filing during the applicable time period). Further, in his memorandum, Cabrera states that he filed his claim late, not because of a legal disability, but because he was unaware of the existence of the EEOC. (Resp. to Def.'s Supplemental Mtn. to Dismiss (6/7/04), at 3).

Cabrera also argues that the EEOC would not have issued a right to sue letter had he filed an untimely charge. However, Cabrera's Title VII claim is still subject to dismissal for failure to comply with the statutory filing deadlines. *See, e.g., Warnick v. Flex-N-Gate Corp.*, No. 1:03-CV-578, 2004 WL 828224, at * 4 (S.D. Ind. Mar. 12, 2004) (noting the Seventh Circuit consistently dismisses Title VII cases for failure to file an EEOC charge within the statutory time period and "most of the plaintiffs in the above-cited cases ... had a right-to-sue letter from the EEOC, issued subsequent to an untimely EEOC charge."). In *Warnick*, plaintiff sued in federal court two years after her termination and filed her charge with the EEOC twenty-seven months after her termination. *Id.* at * 3. The court specifically held that allowing plaintiff to proceed with her Title VII claims in federal court "would render the Title VII administrative exhaustion requirements meaningless." *Id.* at * 5. We agree. Having failed to file a timely charge with the EEOC, we must dismiss Cabrera's claims under Title VII and the ADEA for failure to comply with the statutory filing requirements.

**B.    Claims Brought under the U.S. Constitution and 42 U.S.C. § 1983**

Cabrera also references 42 U.S.C. § 1983 in his complaint. To the extent he seeks to assert a claim under this statutory provision, it must fail. Section 1983 provides that no person acting "under color of any statute ..." shall deprive another of rights secured by the Constitution or laws. 42 U.S.C.

9

§ 1983. In his amended complaint, Cabrera admits that WFC is a private corporation. Based on the factual allegations in the complaint, it is unclear how WFC or any of its employees could be alleged to have acted under color of law.[8] *See* 42 U.S.C. § 1983; *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (explaining that to state a claim under § 1983, plaintiff must allege a deprivation of a constitutional right resulting from defendant acting under color of law or a concerted effort between a state actor and that individual). Additionally, in several of his headings and throughout the complaint, Cabrera also mentions the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.[9] To the extent these references purport to state a violation under each of these amendments, they must be dismissed. Claims under § 1983 for violations of any one of these amendments or claims brought directly under the Constitution are not viable because Cabrera admits

---

[8] While the statute of limitations is an affirmative defense, *see* Rule 8(c), and a litigant need not anticipate affirmative defenses in his complaint, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense. . . ." *Unites States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (internal citation omitted). Here, Cabrera has stated the date of his termination in his complaint and complained only of actions that took place between 1997 and 1999. Therefore, Cabrera has alleged the ingredients of a defense. Cabrera's claims under § 1983 and § 1985 are barred by the applicable statute of limitations. In Illinois, there is a two-year statute of limitations for claims brought under 42 U.S.C. §§ 1983 and 1985. *See Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001); *see also Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (explaining that the appropriate statute of limitations for § 1983 claims is the limitations period for personal injury claims in the state in which the alleged constitutional violation occurred). Similarly, Cabrera's claims brought directly under the Constitution are subject to the same statute of limitations. *See Bieneman v. City of Chicago*, 864 F.2d 463, 469-70 (7th Cir. 1988).

[9] In addition to listing the various constitutional amendments and §1983 and § 1985 in the headings of his complaint, Cabrera claims the following: deprivation of property, specifically his right to educational opportunities and his fundamental right to practice; that he was deprived of due process of law; that his right to privacy was violated; that he was threatened with economic loss (citing 42 U.S.C. § 1985); and that defendant participated in educational intimidation (citing § 1983). It is unclear if these allegations are subsumed in his general constitutional allegations; however, because the analysis for all the claims is the same to the extent these phrases allege a constitutional violation, we need not speculate further.

§ 1983. In his amended complaint, Cabrera admits that WFC is a private corporation. Based on the factual allegations in the complaint, is unclear how WFC or any of its employees could be alleged to have acted under color of law.[8] *See* 42 U.S.C. § 1983; *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (explaining that to state a claim under § 1983, plaintiff must allege a deprivation of a constitutional right resulting from defendant acting under color of law or a concerted effort between a state actor and that individual). Additionally, in several of his headings and throughout the complaint, Cabrera also mentions the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.[9] To the extent these references purport to state a violation under each of these amendments, they must be dismissed. Claims under § 1983 for violations of any one of these amendments or claims brought directly under the Constitution are not viable because Cabrera admits

---

[8] While the statute of limitations is an affirmative defense, *see* Rule 8(c), and a litigant need not anticipate affirmative defenses in his complaint, "[a] litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense. . . ." *Unites States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003) (internal citation omitted). Here, Cabrera has stated the date of his termination in his complaint and complained only of actions that took place between 1997 and 1999. Therefore, Cabrera has alleged the ingredients of a defense. Cabrera's claims under § 1983 and § 1985 are barred by the applicable statute of limitations. In Illinois, there is a two-year statute of limitations for claims brought under 42 U.S.C. §§ 1983 and 1985. *See Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001); *see also Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (explaining that the appropriate statute of limitations for § 1983 claims is the limitations period for personal injury claims in the state in which the alleged constitutional violation occurred). Similarly, Cabrera's claims brought directly under the Constitution are subject to the same statute of limitations. *See Bieneman v. City of Chicago*, 864 F.2d 463, 469-70 (7th Cir. 1988).

[9] In addition to listing the various constitutional amendments and §1983 and § 1985 in the headings of his complaint, Cabrera claims the following: deprivation of property, specifically his right to educational opportunities and his fundamental right to practice; that he was deprived of due process of law; that his right to privacy was violated; that he was threatened with economic loss (citing 42 U.S.C. § 1985); and that defendant participated in educational intimidation (citing § 1983). It is unclear if these allegations are subsumed in his general constitutional allegations; however, because the analysis for all the claims is the same to the extent these phrases allege a constitutional violation, we need not speculate further.

that WFC is a private employer and fails to allege any state or federal action by WFC.[10] *See, e.g., Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 923 (1982) (stating the Fourteenth Amendment can be violated only by conduct that may fairly be characterized as "state action."). As such, to the extent Counts II-VIII assert violations of the United States Constitution or constitutional deprivations in violation of § 1983, they must be dismissed.[11]

C. **State Law Claims**

Having dismissed all of Cabrera's federal claims, we must determine whether it is appropriate to assert supplemental jurisdiction over his state law claims. Under 28 U.S.C. § 1367, a federal court has jurisdiction to hear all claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Claims are sufficiently related if they "derive from a common nucleus of operative fact..." *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 164-65 (1997) (citations omitted). In this case, Cabrera's state law and federal claims all arise out of the same set of facts – his employment with and termination by WFC.

While district courts have discretion in determining whether to retain jurisdiction, the general presumption in the Seventh Circuit is that a court should dismiss without prejudice supplemental state law claims once all federal claims have been dismissed. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). There are, however, several factors that a court should consider before doing so, including "considerations of judicial economy, convenience and fairness to the litigants" as well as

---

[10] Cabrera argues that because WFC is incorporated in Illinois, it has a fiduciary relationship with the state and thus is acting under color of state law. The Seventh Circuit has specifically stated that "for purposes of § 1983, state regulation does not necessarily command a finding of 'state action' status." *Tunca v. Lutheran Gen. Hosp.*, 844 F.2d 411, 413 (7th Cir. 1988). Nothing alleged in this complaint can be fairly attributed to the state.

[11] Cabrera's claims under the Illinois Constitution also fail because Cabrera has alleged no state action. *See, e.g., Kelly v. Mercoid Corp.*, 776 F. Supp. 1246, 1256 (N.D. Ill. 1991); *Chicago Commons Ass'n v. Hancock*, 804 N.E. 2d 703, 707 (Ill. App. Ct. 2004).

11

novelty and complexity of the issues presented by the state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Cabrera's state law claims require a straightforward application of Illinois law and the resolution of his state law claims is clear. Indeed, the statute of limitations has run on most of the state law claims, precluding the assertion of those claims in state court. *See, e.g., Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (setting forth the exceptions to the general presumption of declining to exercise jurisdiction including when the statute of limitations has run on the pendant claim). Moreover, the parties have had numerous opportunities to present their arguments before this court and such efforts would only be duplicated in another forum. As such, we retain jurisdiction over the remaining state law claims.

First, Cabrera purports to assert claims under the IHRA. However, it is clear that the Illinois Human Rights Commission has exclusive jurisdiction over such claims. *Talley v. Washington Inventory Serv.*, 37 F.3d 310, 312-13 (7th Cir. 1994). Judicial review is only available under IHRA after the Commission has issued a final order on a complaint. *See Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004). Cabrera does not allege that he filed a charge with the Illinois Department of Human Rights and thus we have no jurisdiction to hear his claims under IHRA. *See* 775 Ill. Comp. Stat. 5/8-111(C) ("No court of this state shall have jurisdiction over the subject matter of an alleged civil rights violation other than set forth in the Act.").[12] He missed the filing deadline by over three years. Cabrera's claims under the IHRA are accordingly dismissed.

---

[12] Claims based on the Illinois Constitution or Illinois statutes which are inextricably linked to civil rights violations are subject to the IHRA. *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004). The IHRA preempts such claims and requires that they be brought before the IHRC. *Quantock v. Shared Mktg. Servs.*, 312 F.3d 899, 905 (7th Cir. 2002). As such, to the extent Cabrera's claims under state law and the Illinois Constitution are identical to or inextricably linked to his claims under IHRA, they are preempted.

Second, although statute of limitations is an affirmative defense and a plaintiff need not plead around affirmative defenses, from the face of the complaint, it is clear that Cabrera's remaining claims are time-barred. Cabrera includes in his complaint several phrases, that while not part of a complete sentence or allegation, may be construed as alleging the following state law claims: intentional infliction of emotional distress ("IIED"), false light, defamation, and wrongful discharge.[13] While it is difficult to discern what facts make up these various allegations, the statute of limitations has run on the claims he appears to be alleging.[14] For instance, to the extent he is alleging defamation or false light, the applicable time period for filing such claims is two years. *See* 735 Ill. Comp. Stat. 5/13-201. To the extent he alleges intentional infliction of emotional distress, that claim is untimely as well. *See* 735 Ill. Comp. Stat. 5/13-202; *Feltmeier v. Feltmeier*, 798 N.E. 2d 75, 85 (Ill. 2003) (stating that the two-year statute of limitations for personal injuries applies to IIED claims).[15] As such, these claims are dismissed.

---

[13] Other causes of action he purports to assert in his amended complaint (based on isolated phrases) include violations of the Chicago Public School Policy Manual and conspiracy. It is unclear how the Chicago Public School Policy Manual applies to WFC, therefore Cabrera has no viable claim for any alleged violations of it. Further, in Illinois, conspiracy is not a separate tort; rather, it is the act "performed in pursuit of the agreement that may create liability." *Hurst v. Capital Cities Media, Inc.*, 754 N.E. 2d 429, 438 (Ill. App. Ct. 2001). As such, there is no cause of action for conspiracy unless there is an overt, tortious, or unlawful act that would entitle plaintiff to relief even without the conspiracy. *Id.* Here, Cabrera purports to state a claim for a conspiracy to "not permit the plaintiff to acquire the knowledge and skills that would eventually lead Cabrera to the position of assistant engineer." (FAC ¶ 1b14). From what we can discern from allegations contained in the amended complaint, Cabrera complains of no unlawful act that would give rise to liability under a conspiracy claim. Therefore, Cabrera's conspiracy claim is dismissed.

[14] For the same reasons we set forth above, the statute of limitations on these claims is not tolled because Cabrera is not under a legal disability as described in 735 Ill. Comp. Stat. 5/13-211. *See, e.g., Hochbaum v. Casiano*, 686 N.E. 2d 626, 631 (Ill. App. Ct. 1997) (stating that a person suffers from a legal disability if he is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate.").

[15] As stated above, many of Cabrera's state law claims, most obviously his wrongful discharge claim, would be preempted by IHRA, *see* 775 Ill. Comp. Stat. 5/8-111(C), because the claims are inextricably linked to his civil rights claims. The same facts comprising his employment discrimination claim support any purported wrongful discharge claim.

### D. Criminal and other Statutory Allegations

In the text of his complaint, Cabrera makes references to stalking ("Cabrera was stalked and accosted on a regular basis until his termination"), educational intimidation, and cites to the statute that covers intimidation. Cabrera may not bring a civil cause of action for these crimes as no civil action is authorized under 720 Ill. Comp. Stat. 5/12-6 or 720 Ill. Comp. Stat. 5/12-7.3. As for his claim of educational intimidation, the text of the law provides, "[a] person commits educational intimidation when he knowingly interferes with the right of any child who is or is believed to be afflicted with a chronic infectious disease to attend or participate in the activities of an elementary or secondary school in this State." 720 Ill. Comp. Stat. 5/12-7.2. This law clearly does not apply to Cabrera, who is an adult and who was not attending elementary or secondary school.

In sum, because, even under the most liberal reading of his complaint, Cabrera has presented no claims that are viable, we must dismiss the complaint in its entirety. Accordingly, we grant WFC's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, WFC's motion to dismiss the complaint is granted. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated 7/6/04

14